UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

SHANE Q. WHIPPLE,

        Plaintiff,

v.                                      Case No. 3:16-cv-936-J-34MCR

MICHAEL JOHNSON, et al.,

        Defendants.

_____

## ORDER

### I. Status

Plaintiff Shane Q. Whipple, a former inmate of the Florida penal system, initiated this action on July 21, 2016, by filing a Civil Rights Complaint (Doc. 1) pursuant to 42 U.S.C. § 1983 based upon an incident that occurred while he was housed at Union Correctional Institution (UCI). He filed an Amended Complaint (Doc. 8) on October 13, 2016, and a Second Amended Complaint (SAC; Doc. 21) on January 20, 2017. In the SAC, Whipple names the following Defendants: (1) B. Korey, a Lieutenant at UCI; (2) Joshua Abernathy, a Correctional Officer at UCI; (3) Michael K. Johnson, a Correctional Officer at UCI; (collectively "the Defendant Officers") and (4) Nurse K. Zebley, a licensed practical nurse at UCI. Whipple asserts that Defendants used "malicious and sadistic" force against him in violation of the Eighth Amendment's proscription against cruel and unusual punishment and retaliated against him for filing grievances in violation of the First Amendment. See SAC at 6. As to Defendants Korey, Abernathy, and Johnson, Whipple also asserts a due process violation for the confiscation of his personal property. Id. at 8.

This matter is before the Court on Defendant Nurse Zebley's Motion to Dismiss (Zebley Motion; Doc. 42); Defendants Johnson and Korey's Motion to Dismiss (Johnson Motion; Doc. 44); and Defendant Abernathy's Motion to Dismiss (Abernathy Motion; Doc. 57) (collectively, Motions). The Court advised Whipple that granting a motion to dismiss would be an adjudication of the case that could foreclose subsequent litigation on the matter and gave him an opportunity to respond. <u>See</u> Orders (Docs. 29, 48, 51, 56). Plaintiff filed his responses in opposition to the Motions (Docs. 61, 62). As such, the Motions are ripe for review.

## II. Motion to Dismiss Standard

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. <u>See</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009); <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 508 n.1 (2002); <u>see also</u> <u>Lotierzo v. Woman's World Med. Ctr., Inc.</u>, 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. <u>See</u> <u>Randall v. Scott</u>, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. <u>Jackson v. Bellsouth Telecomm.</u>, 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" <u>Erickson v. Pardus</u>, 551 U.S. 89, 93 (2007) (per curiam) (<u>quoting</u> <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim that is plausible on its face." <u>Twombly</u>, 550 U.S. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." See Iqbal, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" Id. at 678 (quoting Twombly, 550 U.S. at 570).

Pleadings submitted by pro se plaintiffs, however, "are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam). Nevertheless, courts are under no duty to "re-write" a plaintiff's complaint to find a claim. Peterson v. Atlanta Hous. Auth., 998 F.2d 904, 912 (11th Cir. 1993).

### III. Complaint Allegations[1]

Whipple asserts two claims against all Defendants: (1) that they violated his Eighth Amendment right by unnecessarily and wantonly inflicting pain[2]; and (2) that they violated his First Amendment right by retaliating against him for exercising his right to file grievances.[3] See SAC at 6-8. He also alleges a third claim against the Defendant Officers for confiscating his personal property in violation of the due process clause of the Fourteenth Amendment. Id. at 8. In his "Statement of Case and Facts," Whipple primarily directs his assertions to the Eighth Amendment excessive force claim, labeling the relevant facts with a heading that reads, "Day of Incident[:] 'Illegal Excessive Use of Force.'" Id. at 12.

According to Whipple, the Defendant Officers harassed him daily since his transfer to UCI on April 20, 2016.[4] Id. at 11. Because of the constant harassment, which included verbal abuse, property confiscation, and other acts of physical harm,[5] Whipple filed

---

[1] The SAC is the operative pleading. In considering a motion to dismiss, the Court must accept all factual allegations in the SAC as true, consider the allegations in the light most favorable to the plaintiff, and accept all reasonable inferences that can be drawn from such allegations. Miljkovic v. Shafritz & Dinkin, P.A., 791 F.3d 1291, 1297 (11th Cir. 2015). As such, the recited facts are drawn from the SAC and may differ from those that ultimately can be proved.

[2] Whipple also cites Florida Statutes section 768.28(9)(a), claiming that "Defendants waived their personal immunity for conduct giving rise to" his claims. See SAC at 7.

[3] Whipple's allegations of a First Amendment violation as to Nurse Zebley are vague. However, construing the allegations in his SAC liberally, as this Court must do, it appears Whipple attempts to assert a First Amendment retaliation claim against Nurse Zebley as well as against the Defendant Officers. In his SAC, for example, he asserts that he filed grievances complaining about the mental health staff, including Nurse Zebley, and he further states that "Defendants violated [his] First Amendment rights . . . when [he] [was] punished for filing a grievance concerning the conditions of his imprisonment." See SAC at 8.

[4] Whipple explains that he was transferred from Apalachee Correctional Institution (ACI), East Unit on April 20, 2016, and the Defendant Officers inventoried his personal property upon his arrival. See SAC at 11.

[5] Whipple describes multiple instances of officers (though not necessarily these Defendants) forcing him to walk long distances in shackles, causing his ankles to bleed. Id. He also asserts that Defendant Johnson "maliciously and sadistically closed [his] hand in the [food] flap . . . and denied [him] morning beverages"

grievances and "ended up cutting [him]self." Id. at 12. He contends that because of his grievance-writing activities and his mental health status, Defendants[6] retaliated against him by filing false disciplinary reports, which resulted in his placement on self-harm observation status. Id. at 8, 12. Whipple asserts that seven days before the beating incident, on May 6, 2016, Defendant Abernathy threatened him, saying "when the right nurse is working we will beat you to sleep." Id. at 12.

With regard to the incident forming the basis of the excessive force claim, Whipple asserts that on May 13, 2016, Nurse Zebley and Abernathy "skipped his cell" during morning pill-pass, purposely denying him his mental health medications. Id. at 12, 14. According to Whipple, as they passed his cell, Nurse Zebley "smiled at [him] without offering [his] assigned medications." Id. After morning pill-pass, at about 8:25 a.m., Abernathy and Johnson told Whipple they had to take him out of his cell to see Dr. Davis, the "psych doctor," and that he would be receiving his medications at that time. Id. at 12-13. Whipple then describes the following events:

> I was shackled, handcuffed, and waist chained by Michael Johnson and Joshua Abernathy and taken downstairs to O-Dorm Medical room . . . . When I entered the O-Dorm Medical room, I noticed that Nurse K. Zebley and Sgt. B. Korey were both in the back of the room with gloves on. I was ordered to sit in a chair that was positioned in the middle of the . . . room . . . . At that time a piece of plastic bag was placed over my face from behind my seating position, and it was Sgt. B. Korey who asphyxiated me and took me to the ground from my seated position while Abernathy and Johnson beat me on both sides of my ribs and hit me on [the] back of my head multiple times. Michael Johnson took his radio off and hit me in my ribs with his radio.

on May 5, 2016. Liberally construing the allegations in his SAC, Whipple does not appear to be asserting a claim against Johnson for the May 5 incident.

[6] Whipple's description of events leading up to the May 13, 2016 incident reference only the Defendant Officers, not Nurse Zebley.

Id. at 13. Nurse Zebley's involvement, Whipple describes, was limited. She did not physically participate in the beating, but she "was present and witnessed th[e] planned attack." Id. Whipple also asserts that Nurse Zebley did not provide prompt medical attention for his injuries, which he describes as cracked/bruised ribs, persisting for two weeks. Id.

### IV. Defendants' Motions

The Defendant Officers and Nurse Zebley all assert Eleventh Amendment immunity as to claims against them in their official capacities for damages. See Zebley Motion at 1; Johnson Motion at 1; Abernathy Motion at 2. In her Motion, Nurse Zebley also maintains that the Court should dismiss the claims against her for the following reasons: Whipple failed to exhaust his administrative remedies; Whipple fails to state a claim against her for deliberate indifference under the Eighth Amendment; she is entitled to qualified immunity; and Whipple has asserted no physical injuries attributable to her actions or inactions. See Zebley Motion at 1. Nurse Zebley does not address the First Amendment retaliation claim. See id.

The Defendant Officers assert the following additional grounds in support of their Motions: Whipple's SAC should be dismissed for his failure to disclose a prior federal lawsuit on the Civil Rights Complaint Form, and Whipple's claims for verbal harassment and property deprivation are subject to dismissal for failure to state a claim. See Johnson Motion at 1; Abernathy Motion at 1-2. They do not argue that Whipple has failed to state a claim for excessive use of force under the Eighth Amendment, nor do they move to dismiss the First Amendment retaliation claim. See id.

**V. Law and Conclusions**

**A. Exhaustion of Administrative Remedies: Claims Against Nurse Zebley**

The Prison Litigation Reform Act (PLRA) requires exhaustion of available administrative remedies before a 42 U.S.C. § 1983 action with respect to prison conditions may be initiated in a district court by a prisoner. See 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted."). Nevertheless, prisoners are not required to "specially plead or demonstrate exhaustion in their complaints." See Jones v. Bock, 549 U.S. 199, 216 (2007). Instead, the United States Supreme Court has recognized that "failure to exhaust is an affirmative defense under the PLRA[.]" Id. Exhaustion of available administrative remedies is "a precondition to an adjudication on the merits." Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). See also Jones, 549 U.S. at 211. While "the PLRA exhaustion requirement is not jurisdictional[,]" Woodford v. Ngo, 548 U.S. 81, 101 (2006), "exhaustion is mandatory . . . and unexhausted claims cannot be brought," Pavao v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017) (per curiam) (citing Jones, 549 U.S. at 211).

As an affirmative defense, exhaustion of available administrative remedies is a matter of abatement and should be raised in a motion to dismiss. Bryant, 530 F.3d at 1374. The Eleventh Circuit has articulated a two-step process that district courts must employ when examining the issue of exhaustion of administrative remedies.

> In Turner v. Burnside[7] we established a two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust. 541 F.3d at 1082. First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the

---

[7] Turner v. Burnside, 541 F.3d 1077 (11th Cir. 2008).

7

> facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. Id. Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust. Id. at 1082–83; see also id. at 1082 (explaining that defendants bear the burden of showing a failure to exhaust).

Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1209 (11th Cir. 2015). Not only is there a recognized exhaustion requirement, "the PLRA . . . requires proper exhaustion" as set forth in applicable administrative rules and policies. Woodford, 548 U.S. at 93.

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)."

Id. at 90 (citation omitted). As such, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]" Id.

The FDOC provides an internal grievance procedure for its inmates. See Fla. Admin. Code r. 33-103.001 through 33-103.018. Generally, to properly exhaust administrative remedies, a prisoner must complete a three-step process. First, an inmate must submit an informal grievance to a designated staff member at the institutional level. See Fla. Admin. Code r. 33-103.005. If the issue is not resolved, the inmate must submit a formal grievance at the institutional level. See Fla. Admin. Code r. 33-103.006. If the matter is not resolved at the institutional level, the inmate must file an appeal to the Office of the Secretary of the FDOC. See Fla. Admin. Code r. 33-103.007. However, under certain circumstances, an inmate can bypass the informal grievance step and start with

a formal grievance at the institutional level. See Fla. Admin. Code r. 33-103.005(1), 33-103.006(3). The following types of grievances may be filed directly as formal grievances, bypassing the informal grievance step: emergency grievances, grievances of reprisal, and medical grievances. Id. An inmate who bypasses the informal grievance step must clearly state why he bypassed that step. If the inmate fails to indicate the reason for bypassing the first step, the grievance will be "returned without action with the reasons for the return specified." Fla. Admin. Code r. 33-103.006(4).

Florida Administrative Code Rule 33-103.011 provides time frames for submission of grievances at each step. A formal grievance must be filed within fifteen calendar days from either the date the institution responded to an informal grievance or, if the inmate bypasses the informal grievance step, the date on which the incident being grieved occurred. See Fla. Admin. Code r. 33-103.011(1)(a). Grievance appeals to the Office of the Secretary must be received within fifteen days from the date the response to the formal grievance is returned to the inmate. See Fla. Admin. Code r. 33-103.011(1)(c).

Nurse Zebley maintains that Whipple failed to exhaust his administrative remedies with respect to his claims against her. See Zebley Motion at 5. In support of her Motion, Nurse Zebley provides sixteen grievances Whipple submitted to the institution between the date of the incident, May 13, 2016, and the date he initiated this action, July 21, 2016 (Zebley Motion Ex.).[8] She correctly states that in none of the grievances she provides does Whipple mention the May 13, 2016 incident or Nurse Zebley herself.[9] In his SAC,

---

[8] Nurse Zebley states in her Motion that Whipple submitted seventeen grievances. However, one of the grievances she provides is a duplicate of another. See Zebley Motion Ex. at 1, 6.

[9] In the informal grievances (inmate request forms), Whipple requests replacement shoes and the return of personal property, including prescription eyeglasses; expresses a fear of attacks and retaliatory conduct; and complains of a denial of recreation time, a denial of cups, and the general conditions of confinement. See Zebley Motion Ex.

Whipple asserts that he "filed many exhaustive grievances" following the incident. See SAC at 13. In addition, in his response to Nurse Zebley's Motion (Pl. Zebley Resp.; Doc. 61), Whipple reiterates that he grieved the "deprivation of medical treatment" claim against Nurse Zebley, though he states that he was previously unable to provide copies of the grievances because his personal property was confiscated.[10] See Pl. Zebley Resp. at 5.

Under the first part of the two-step exhaustion analysis, the Court must accept Whipple's assertions as true. Assuming Whipple has properly grieved his claim against Nurse Zebley for her failure to provide medical treatment, the Court is not persuaded that such a claim against her is subject to dismissal at the first step of the Turner analysis. Thus, the Court proceeds to the second step of the Turner analysis to resolve the issue of whether Whipple has indeed exhausted his administrative remedies. To resolve a factual dispute about exhaustion, a district court may "consider facts outside of the pleadings . . . so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Bryant, 530 F.3d at 1376 (footnotes omitted). Here, the Court considers the grievances Whipple provided in support of his first amended complaint, filed October 13, 2016 (FAC; Doc. 8), as well as those provided by Nurse Zebley.

Upon a review of the grievances Whipple submitted with his FAC, it appears that Nurse Zebley's representation that Whipple submitted no grievances complaining of the May 13, 2016 incident is inaccurate. Nurse Zebley is correct that Whipple did not submit

---

[10] In Response to Zebley's Motion, he seeks the Court's permission to amend his complaint so he may furnish the relevant documentation. See Pl. Zebley Resp. at 6. While Whipple did not submit the relevant grievances with his SAC, he did provide them in support of his former complaint (Doc. 8).

informal grievances complaining of the incident. However, Whipple submitted three formal grievances within two days of the May 13, 2016 incident. Moreover, between the date of the incident and July 18, 2016, he submitted a total of seven formal grievances, four appeals, and two emergency grievances to the Office of the Secretary.[11] In almost all of these, he complains about the May 13, 2016 incident, and he identifies Nurse Zebley. Not only did Whipple submit more than one grievance complaining about the beating incident and Nurse Zebley's involvement in it, he was warned, in one of the responses (Doc. 8-20), not to file multiple grievances on the same issue.

Of significance, on May 15, 2016, Whipple submitted two formal grievances about the May 13, 2016 incident—one he identified as an "emergency" (Emergency Grievance; Doc. 8-15), and the other he identified as a "medical grievance" (Medical Grievance; Doc. 8-1), thus permitting him to bypass the informal grievance step. In the Emergency Grievance (No. 1605-213-218), Whipple relays the facts of the May 13, 2016 incident: two officers removed him from his cell under the guise of taking him for his medications and, upon arriving at the medical unit, where Nurse Zebley and Sgt. Korey were waiting, he was brutally beaten. <u>See</u> Emergency Grievance at 1. Notably, Whipple does not mention that Nurse Zebley denied him medications during the morning pill-pass, though he does identify her as a participant in the assault, stating that she "struck [him] one time in [his] rib" while smiling at him. <u>Id.</u> On May 22, 2016, the Warden approved this grievance to the extent that Whipple's complaint was referred to the Office of the Inspector General (OIG) (Doc. 8-16). Whipple thereafter filed an appeal (Doc. 8-19) to the Office of the

<hr>

[11] The Court will give Nurse Zebley's counsel the benefit of the doubt with respect to her failure to direct the Court's attention to these obviously relevant grievances, but reminds her of her ethical obligation of candor toward the tribunal as well as her obligations under Rule 11, Federal Rules of Civil Procedure.

Secretary on May 23, 2016 (No. 16-6-23446), repeating the pertinent facts and requesting medical care, stating that he was not "seen or treated for [his] injuries" and claiming that he had blood in his urine. See Doc. 8-19. Prison officials denied his request for action (Doc. 8-20) on June 29, 2016, because the subject of his grievance had already been referred to the OIG.

In the Medical Grievance (No. 1605-213-219), Whipple recounts the pertinent facts and, again describes Nurse Zebley's direct involvement. See Medical Grievance at 1. He also states that he did not receive medical treatment for his injuries, though he does not claim that Nurse Zebley denied him medications. See id. The Assistant Warden approved this grievance on May 22, 2016, and referred the complaint to the OIG (Doc. 8-2). Whipple appealed that grievance (Doc. 8-3) on May 23, 2016 (No. 16-6-22653), claiming he still had not received medical treatment for the May 13, 2016 attack, which he asserted Nurse Zebley "was a part of." See Doc. 8-3 at 1. He requested pain medications and again reported that he had blood in his urine. On June 29, 2016, a prison official denied his appeal because his complaint had already been referred to the OIG (Doc. 8-4).

By submitting formal grievances and appeals, which were timely filed and reviewed on the merits, Whipple completed the FDOC's grievance process regarding two claims against Nurse Zebley: deliberate indifference to a serious medical need based on her failure to provide medical treatment after witnessing the beating, and excessive use of force.[12] Therefore, Whipple properly exhausted his administrative remedies as to these

---

[12] Nurse Zebley suggests in her Motion that the only claim against her is one for deliberate indifference for denying medical care. See Zebley Motion at 2, 5, 6-7. Liberally construing Whipple's allegations, her suggestion is not accurate. In his SAC, Whipple asserts a claim against all Defendants, including Nurse Zebley, for an "illegal excessive use of force." See SAC at 10, 12. Whipple specifically alleges that the Defendant Officers brought him to Nurse Zebley, in the medical room, where the Defendant Officers beat him in her presence. The Court finds these allegations sufficient to plead a claim for excessive force against

claims. However, to the extent Whipple intended to state a claim against Nurse Zebley for a denial of medications, he has not exhausted administrative remedies and may not pursue such a claim.[13] Thus, to the extent Nurse Zebley seeks dismissal of Whipple's claims on the basis of his failure to exhaust, the Zebley Motion is due to be denied as to Whipple's claims for excessive force and a denial of medical care, but granted as to the claim for a denial of medications.

## B. Eleventh Amendment Immunity

To the extent Defendants assert they are entitled to Eleventh Amendment immunity, this Court agrees.

> The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. It is well established that, in the absence of consent, "a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." Papasan v. Allain, 478 U.S. 265, 276, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (quotation omitted). The Eleventh Amendment also prohibits suits against state officials where the state is the real party in interest, such that a plaintiff could not sue to have a state officer pay funds directly from the state treasury for the wrongful acts of the state. Summit Med. Assocs., P.C. v. Pryor, 180 F.3d 1326, 1336 (11th Cir. 1999).

---

Nurse Zebley, whether for her direct participation in the beating or her plan to accomplish the beating, that is plausible on its face.

[13] Whipple submitted a third formal grievance on May 15, 2016 (No. 1605-213-220), in which he mentioned that he "did not get meds at med pass," though he did not attribute a denial of medications to Nurse Zebley, and he did not request medications be provided, but rather requested medical treatment for physical injuries. More importantly, Whipple did not complete the grievance process with respect to this complaint. He submitted an appeal on May 27, 2016 (No. 16-6-23589), but it was returned without action because it was not in compliance with the relevant Florida Administrative Code provisions. Because his grievance was returned without action, he did not properly grieve this complaint. See Bryant, 530 F.3d at 1379 (holding that prisoners must "properly take each step" of the relevant administrative procedures).

Hayes v. Sec'y, Fla. Dep't of Children & Families, 563 F. App'x 701, 703 (11th Cir. 2014) (per curiam). In Zatler v. Wainwright, 802 F.2d 397, 400 (11th Cir. 1986) (per curium), the Eleventh Circuit noted:

> It is clear that Congress did not intend to abrogate a state's [E]leventh [A]mendment immunity in section 1983 damage suits. Quern v. Jordan, 440 U.S. 332, 340-45, 99 S.Ct. 1139, 1144-45, 59 L.Ed.2d 358 (1979). Furthermore, after reviewing specific provisions of the Florida statutes, we recently concluded that Florida's limited waiver of sovereign immunity was not intended to encompass section 1983 suits for damages. See Gamble,[14] 779 F.2d at 1513-20.

Thus, in Zatler, the court found that the FDOC Secretary was immune from suit in his official capacity. Id. Insofar as Whipple may be seeking monetary damages from Defendants in their official capacities, the Eleventh Amendment bars suit. Therefore, Defendants' Motions are due to be granted as to Whipple's claims for monetary damages from them in their official capacities.

### C. Deliberate Indifference Claim Against Nurse Zebley

Nurse Zebley seeks dismissal of Whipple's Eighth Amendment claim against her, arguing that Whipple fails to allege sufficient facts that would entitle him to relief based on an alleged failure to provide medical care. See Zebley Motion at 6, 9.[15] She also maintains that Whipple has failed to assert "any physical injuries" resulting from her actions or omission, as required under the PLRA. Id. at 9. Viewing the facts in the light most favorable to Whipple, a pro se litigant, the Court cannot agree that Whipple has

---

[14] Gamble v. Fla. Dep't of Health & Rehab. Servs., 779 F.2d 1509 (11th Cir. 1986).

[15] As noted above, Nurse Zebley argues Whipple has failed to state a claim for a denial of medical care. Because she narrowly construes his SAC as not asserting an Eighth Amendment claim against her for excessive use of force, she does not seek dismissal of such a claim in the Zebley Motion. As such, although the Court concludes that Whipple does intend to assert an excessive force claim against Nurse Zebley, the Court will not address the merits of the claim here.

failed to state a claim for deliberate indifference against Nurse Zebley or that he has failed to allege physical injuries.

"To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry." <u>Brown v. Johnson</u>, 387 F.3d 1344, 1351 (11th Cir. 2004) (quoting <u>Farrow v. West</u>, 320 F.3d 1235, 1243 (11th Cir. 2003)). First, the plaintiff must satisfy the objective component by showing that he had a serious medical need. <u>Brown</u>, 387 F.3d at 1351.

> "A serious medical need is considered 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" <u>Id.</u> (citing <u>Hill v. Dekalb Reg'l Youth Det. Ctr.</u>, 40 F.3d 1176, 1187 (11th Cir. 1994)). In either case, "the medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm." <u>Id.</u> (citation and internal quotations marks omitted).

<u>Id.</u> Next, the plaintiff must satisfy the subjective component, which requires the plaintiff to "allege that the prison official, at a minimum, acted with a state of mind that constituted deliberate indifference." <u>Richardson v. Johnson</u>, 598 F.3d 734, 737 (11th Cir. 2010) (describing the three components of deliberate indifference as "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence.") (citing <u>Farrow</u>, 320 F.3d at 1245).

A prisoner states a cause of action under § 1983 when he alleges deliberate indifference to a serious illness or injury. <u>See</u> <u>Estelle v. Gamble</u>, 429 U.S. 97, 104–05 (1976) ("[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' . . . . whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care . . . .") (internal citations and

footnotes omitted). <u>See also</u> <u>Burley v. Upton</u>, 257 F. App'x 207, 210 (11th Cir. 2007) ("An official acts with deliberate indifference when that official knows that an inmate is in serious need of medical care but fails or refuses to obtain proper treatment."). The Supreme Court has clarified that "[w]hether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." <u>Farmer v. Brennan</u>, 511 U.S. 825, 842 (1994).

The Court finds Whipple's assertion that his "ribs were cracked and severely bruised for at least two weeks after th[e] incident," <u>see</u> SAC at 13, satisfies the objective component of a deliberate indifference claim. As to the subjective component, Nurse Zebley's argument that Whipple did not directly assert that <u>she</u> had actual (subjective) knowledge of his cracked/bruised ribs would be persuasive if he had not alleged that she witnessed the beating and was involved in a "plan" to bring him to the medical room for that purpose. <u>Cf.</u> <u>Mandel v. Doe</u>, 888 F.2d 783, 788 (11th Cir. 1989) (affirming judgment in favor of an inmate where the evidence showed that the medical provider observed the inmate "dragging his [injured] leg," though failed to take steps to ensure the inmate received adequate treatment).

Based on the facts that Whipple has asserted, it is fair to draw the inference that a trained medical professional who witnessed a beating severe enough to cause a person's ribs to crack would appreciate the potential for serious injury and know that medical care, or at least diagnostic care, should be rendered.[16] <u>See</u> <u>McElligott v. Foley</u>, 182 F.3d 1248,

---

[16] As the only medical provider present during the beating, Nurse Zebley arguably had an obligation to evaluate Whipple and provide any necessary care even if he had not requested treatment or expressed

1257 (11th Cir. 1999) ("A core principle of Eighth Amendment jurisprudence in the area of medical care is that prison officials with knowledge of the need for care may not, by failing to provide care . . . cause a prisoner to needlessly suffer the pain . . . ."). The fact that Whipple does not assert that Nurse Zebley had subjective knowledge of his precise injury—cracked/bruised ribs—only means that Nurse Zebley was unaware of a specific diagnosis. It does not mean that she was not subjectively aware of the need to provide some medical assistance. See, e.g., Davis v. City of Montgomery, 220 F. Supp. 3d 1275, 1287 (M.D. Ala. 2016) ("[I]t is not the failure to diagnose, but rather the failure to provide any medical assistance whatsoever that gives rise to [plaintiff's] claim."). Whipple alleges that Nurse Zebley "was present and witnessed the planned attack . . . . [but] did not provide any prompt medical evaluation or treatment for [his] injuries." See SAC at 13. Reasonably, a jury could conclude that Nurse Zebley "knew of a substantial risk from the very fact that the risk was obvious" based on the beating she witnessed. See Farmer, 511 U.S. at 842.

Construing the facts and drawing all reasonable inferences in Whipple's favor, he has alleged conduct that, if true, would support a plausible deliberate indifference claim based on a denial of medical care. As such, Nurse Zebley's Motion is due to be denied

---

pain. Indeed, when officers undertake an authorized use of force, such as to control a violent inmate, a post-use-of-force exam is required. See Fla. Admin. Code. r. 33-602.210(c)(1)(a). The fact that a medical provider refused to perform a physical evaluation of an inmate she witnesses being brutally attacked could be perceived by a jury as circumstantial evidence that she was at worst a willing participant in the attack, or at least deliberately indifferent to the unprovoked beating and resulting pain. See, e.g., Pizzuto v. County of Nassau, 239 F. Supp. 2d 301, 311 (E.D.N.Y. 2003) (rejecting defendant officers' argument that they lacked subjective knowledge of a serious medical need where the evidence showed that they themselves beat the inmate or witnessed the beating and took steps to ensure the inmate did not receive immediate medical treatment); Smith v. Dooley, 591 F. Supp. 1157, 1170 (W.D. La. 1984) (holding that officers' failure to "render even the most rudimentary aid" to an inmate they used force against "amounted to a callous indifference to his potentially serious medical condition").

as to Whipple's Eighth Amendment claims against her for her failure to provide medical treatment following the May 13, 2016 incident.[17] Moreover, Whipple has alleged more than mental or emotional injuries stemming from the attack. The fact that Whipple has not alleged that his physical injuries were personally caused by Nurse Zebley's hand is of no relevance under the PLRA. He only has to allege a physical injury, which he has done. See 42 U.S.C.A. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury . . . .").

Because the Court finds Whipple has stated a plausible claim against Nurse Zebley for deliberate indifference, she is not entitled to qualified immunity. See Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1186 (11th Cir. 1994) ("A finding of deliberate indifference necessarily precludes a finding of qualified immunity; prison officials who deliberately ignore the serious medical needs of inmates cannot claim that it was not apparent to a reasonable person that such actions violated the law.") (emphasis in original), overruled in part on other grounds by Hope v. Pelzer, 536 U.S. 730 (2002).

### D. Claims Against Defendants Johnson, Korey, and Abernathy

The Defendant Officers seek dismissal of all claims in Whipple's SAC on purely technical grounds: because Whipple failed to disclose one prior federal civil rights action that he filed in 1999. See Johnson Motion at 1-2; Abernathy Motion at 1-2. Additionally, the Defendant Officers contend that Whipple failed to state a claim for verbal harassment and property deprivation.

---

[17] The Court makes no conclusions as to whether Whipple will be able to prove such a claim. However, at this stage of the proceedings, the Court cannot conclude that Whipple's claim against Nurse Zebley lacks facial plausibility. Whipple's claim against Nurse Zebley is best analyzed upon a more complete record, such as in the context of a motion for summary judgment.

### i.      Failure to Disclose One Prior Federal Civil Action

The Defendant Officers seek a dismissal of Whipple's SAC because he failed to disclose one prior federal civil action. In his response (Pl. Johnson Resp.; Doc. 62), Whipple acknowledges this oversight. <u>See</u> Pl. Johnson Resp. at 1, 7. He attributes the omission to memory loss due to his mental health issues and "involuntary injections of psychotropic med[ication]s" and requests an opportunity to amend his complaint to cure the omission. <u>See</u> <u>id.</u> A court may, in its discretion, dismiss a complaint for abuse of judicial process if a pro se plaintiff knowingly and deliberately fails to disclose prior lawsuits based on conditions of confinement. <u>See</u> <u>Harris v. Warden</u>, 498 F. App'x 962, 964 (11th Cir. 2012) (per curiam) (recognizing a district court's inherent power to impose sanctions for an abuse of judicial process but only on a "finding of bad faith on the part of the litigant"); <u>Redmon v. Lake Cty. Sheriff's Office</u>, 414 F. App'x 221, 225-26 (11th Cir. 2011) (per curiam) (recognizing that 28 U.S.C. § 1915 permits dismissal where a "plaintiff engage[s] in bad faith litigiousness or manipulative tactics"); <u>Pinson v. Grimes</u>, 391 F. App'x 797, 798, 799 (11th Cir. 2010) (per curiam) (finding plaintiff's failure to disclose two federal cases an abuse of judicial process, even though there was no evidence of an intent to defraud, because the plaintiff filed the two cases within the prior month).

The Court is of the view that Whipple's failure to disclose one prior federal civil action is insufficient under the circumstances of this case to warrant dismissal of his SAC. The relevant facts, including Whipple's explanation for the omission, do not suggest an intentional act of bad faith or an attempt to manipulate or frustrate the Court or the judicial process. Notably, Whipple did not attempt to avoid disclosing any information about prior federal civil rights actions. Indeed, he disclosed an action he filed more recently, in 2016.

<u>See</u> SAC at 2-3. <u>Cf.</u> <u>Harris</u>, 498 F. App'x at 965 (noting that the plaintiff made no attempt at all to disclose any prior civil actions). It is certainly plausible that Whipple, a prisoner with demonstrated mental health issues, simply forgot about a case he filed almost twenty years ago. Moreover, the 1999 action was dismissed for Whipple's failure to exhaust administrative remedies, not for frivolity or an abuse of judicial process, which the Court finds significant.[18] <u>Cf.</u> <u>Jackson v. Fla. Dep't of Corr.</u>, 491 F. App'x 129, 132 (11th Cir. 2012) (affirming dismissal where the plaintiff failed to disclose a prior action dismissed under § 1915 as frivolous, malicious, or for failure to state a claim). Thus, the Court, in its discretion, finds Whipple's omission, while certainly not condoned, does not warrant the imposition of the severe sanction of dismissal.

### ii.    Verbal Threats and Property Deprivation

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege "(1) that the defendant deprived [him] of a right secured under the United States Constitution or federal law and (2) that such a deprivation occurred under color of state law." <u>Bingham v. Thomas</u>, 654 F.3d 1171, 1175 (11th Cir. 2011) (per curiam) (alteration in original). In the absence of a federal constitutional deprivation or violation of a federal right, a plaintiff cannot sustain a cause of action. <u>See</u> <u>id.</u> To the extent Whipple intends to state a claim, or seek relief, for the Defendant Officers' alleged verbal abuse and threats not associated with the May 13, 2016 incident, he has failed to state a plausible claim for relief. Generally, allegations of verbal abuse and threats, without more, do not rise to the level of a constitutional violation. <u>See</u> <u>Hernandez v. Fla. Dep't of Corr.</u>, 281 F. App'x 862, 866 (11th Cir. 2008) (finding that the plaintiff's "allegations of verbal abuse and threats by the prison

---

[18] <u>See</u> Order (Doc. 10), Case No. 3:99-cv-447-WTH (dismissed May 21, 1999).

officers did not state a claim because the defendants never carried out the[] threats"). See also Barfield v. Hetzel, No. 2:11-cv-1114-WHA, 2015 WL 758490, at *4 (M.D. Ala. Feb. 23, 2015) (citing Edwards v. Gilbert, 867 F.2d 1271, 1274 n.1 (11th Cir. 1989)) ("Derogatory, demeaning, profane, threatening or abusive comments made by an officer to an inmate, no matter how repugnant or unprofessional, do not rise to the level of a constitutional violation."). While the alleged history of verbal abuse and threats may be relevant to his Eighth Amendment claim with respect to the May 13, 2016 incident and his First Amendment retaliation claim, the threats and verbal abuse do not independently state a claim for relief.[19]

Whipple also has failed to state a plausible due process claim resulting from a deprivation of his personal property.[20] The Due Process Clause is not offended when a state employee intentionally deprives a prisoner of his property as long as the State provides him with a meaningful post-deprivation remedy. See Hudson v. Palmer, 468 U.S. 517, 533 (1984) (holding that a guard's intentional destruction of a prisoner's personal property did not violate the Fourteenth Amendment where the prisoner had available to him "several common-law remedies . . . [that] would provide adequate compensation for [the] property loss"); Jackson v. Hill, 569 F. App'x 697, 698 (11th Cir. 2014); Taylor v. McSwain, 335 F. App'x 32, 34 (11th Cir. 2009) ("Regarding deprivation of property, a state

---

[19] If Whipple had alleged only that the Defendant Officers forced him to endure verbal threats and taunts, without carrying through on any of those threats, the Defendant Officers would be entitled to relief as to the retaliation claim as well. However, what Whipple alleges goes far beyond asserting only verbal abuse. He describes, in some detail, a series of events that allegedly culminate in a physical attack. Given Whipple's Response to the Defendant Officers' Motions, it does not appear he intends to pursue a claim based on verbal abuse alone. He states that Defendants' assertions that Whipple alleged only threats and verbal abuse is "not true" because he "describes a severe beating by Defendants, who all participated in a physical way." See Pl. Johnson Resp. at 8.

[20] Whipple does not address this claim in his response to the Defendant Officers' Motions.

employee's unauthorized intentional deprivation of an inmate's property does not violate due process under the Fourteenth Amendment if a meaningful post[-]deprivation remedy for the loss is available."). Here, Whipple has an available, adequate post-deprivation remedy under state law. "Under Florida law, [a plaintiff] can sue the officers for the conversion of his personal property." Jackson, 569 F. App'x at 698 (citing Case v. Eslinger, 555 F.3d 1317, 1331 (11th Cir. 2009)).[21] Thus, the Defendant Officers' Motions are due to be granted to the extent Whipple asserts claims for verbal abuse and confiscation of personal property.

### VI. Conclusion

In light of the above, the following claims may proceed: (1) Eighth Amendment deliberate indifference against Nurse Zebley for an alleged denial of medical care following the May 13, 2016 incident; (2) Eighth Amendment deliberate indifference (excessive force) against Nurse Zebley and the Defendant Officers for the May 13, 2016 incident; and (3) First Amendment retaliation against Nurse Zebley and the Defendant Officers based on the allegations that the May 13, 2016 beating was a reprisal against Whipple for filing grievances. To the extent Whipple has requested, in his response to the Johnson Motion to amend his complaint, his request is not properly before the Court. See Rule 3.01(a), (f), Local Rules of the United States District Court for the Middle District of Florida (requiring all requests for relief to be in the form of a proper motion). Moreover, Whipple's request to amend his complaint to attach relevant grievances is moot. Whipple provided the relevant grievances with his FAC, and this Court has considered those in

---

[21] According to the grievance records Nurse Zebley provided in support of her Motion, Whipple submitted informal grievances seeking the return of his personal property. See Zebley Motion Ex. at 1, 3, 11, 13, 20, 24. Prison officials responded to his grievances, informing him that his personal property stored with the prison would be, or had been, returned to him. See id. at 2, 4, 11, 13, 21, 22.

ruling on Defendants' Motions. Finally, to the extent Whipple wishes to submit to the Court "new evidence," he is advised that he may submit relevant evidence at the appropriate time in the litigation of this case, such as in response to a motion for summary judgment or at trial. However, Whipple is advised that if he wishes to pursue new claims against new defendants, he must file a new civil rights complaint form to institute a new action.

Having identified the claims that remain to be litigated in this action, and before setting deadlines for the completion of discovery and the filing of dispositive motions, the Court will require the parties to participate in a settlement conference before the assigned Magistrate Judge.

Accordingly, it is now

**ORDERED:**

1.      Defendant Nurse Zebley's Motion to Dismiss (Doc. 42) is **GRANTED** in part and **DENIED** in part. Her Motion is granted to the extent that Whipple has failed to exhaust his administrative remedies with respect to a denial of medications, and she is entitled to Eleventh Amendment immunity as to claims against her in her official capacity for damages. Her Motion is denied to the extent that Whipple has stated a claim against her for deliberate indifference under the Eighth Amendment based on an alleged denial of medical treatment following the May 13, 2016 incident; Whipple has alleged a physical injury for purposes of the PLRA; and Nurse Zebley is not entitled to qualified immunity.

2.      Defendants Johnson and Korey's Motion to Dismiss (Doc. 44) and Defendant Abernathy's Motion to Dismiss (Doc. 57) are **GRANTED** in part and **DENIED** in part. Their Motions are granted to the extent that Whipple has failed to state a claim for relief based on allegations that the Defendant Officers wrongfully confiscated his personal

property and verbally harassed him, and they are entitled to Eleventh Amendment immunity as to claims against them in their official capacities for damages. Their Motions are denied to the extent that Whipple's SAC is not subject to dismissal for his inadvertent failure to disclose a civil rights suit he filed in federal court in 1999.

3.      Whipple's Motion to Amend and Supplement his Pleadings (Doc. 71) is **DENIED** without prejudice. Whipple has not submitted a motion in compliance with the applicable Federal Rules of Civil Procedure or this Court's Local Rules, and he has not submitted a proposed amended complaint, so the Court is unable to assess whether an amendment is appropriate. To the extent Whipple seeks to pursue new claims against new defendants, he may not do so in this case unless those claims are substantially related to those pending before this Court. He should review his case and, if he chooses to pursue additional related claims, he should submit a proper motion to amend with a proposed amended complaint. Any unrelated claims, however, should be pursued in a separate civil rights action.

4.      This case is referred to the Honorable Monte C. Richardson, United States Magistrate Judge, to conduct whatever settlement efforts may be necessary. No later than **September 14, 2018**, counsel for one of the Defendants, after conferring with all counsel, must contact the Magistrate Judge to schedule the settlement conference. The settlement conference must be completed by **October 31, 2018**.

**DONE AND ORDERED** at Jacksonville, Florida, this 30th day of August, 2018.

MARCIA MORALES HOWARD
United States District Judge

Jax-6

c:      Shane Q. Whipple
        Counsel of Record
        Chambers of the Honorable Monte C. Richardson